Per Curiam.
In this mortgage foreclosure action, Wells Fargo appeals from a final judgment entered upon an order granting the borrowers’ motion for an involuntary dismissal. We conclude that Wells Fargo waived any argument that the trial court erred iri involuntarily dismissing the action before Wells Fargo rested its case. However, because Wells Fargo submitted evidence in support of its lost note claim that was sufficient to preclude an involuntary- dismissal, we reverse the final judgment and remand for a new trial. '
In December 2010, Wells Fargo filed a foreclosure complaint against the borrowers. Attached to the complaint were copies of the mortgage and note containing an allonge indorsed in blank. Wells Fargo later amended the complaint to include a count to reestablish the lost note. The amended complaint also included a- lost note affidavit, as well as a copy of the note (with the allonge indorsed in blank). The lost note affidavit stated that, as part of the search for the lost note, Wells Fargo “check[ed] with [its], current and/or prior attorney.”
At trial, Wells Fargo called as its sole witness a bank employee whose duties included reviewing and verifying business records. The employee, a loan verification analyst, testified that in 2010, before the filing of the foreclosure suit, Wells Fargo sent the original note to its former attorney. The witness stated that the note was lost at some point’ after it was sent to its former attorney!
In explaining Wells Fargo’s procedures for determining whether a note is lost, the witness testified that the bank would check all areas where the note could be, including with prior counsel, previous court files, and the bank’s internal vault, before deeming the note lost. He testified that the bank followed the same routine practice in this case. The trial court then received a copy of the note into evidence, without objection.
The borrowers’ counsel objected to the reestablishment of a lost note, arguing that Wells Fargo could not prove that the noté was indeed lost. The borrowers’ counsel argued to the trial court that there was -no direct evidence that Wells Fargo contacted its former attorney, who worked for a now defunct law firm. He then asked the court for an involuntary dismissal because Wells Fargo had failed to prove its case. The court agreed, and asked counsel if he was making the motion at that time. The borrowers’ counsel replied: “I would. ’Well, they haven’t concluded their case, so I will certainly wait for them', but I would move for an involuntary dismissal, Your Honor.”
The trial court allowed Wells Fargo to further question its witness, telling Wells Fargo’s counsel: “You want to go through it again and prove it? I’ll give you that chance. Go through it again.” During the continued questioning, the witness again confirmed that Wells Fargo followed its routine procedure of contacting the former law firm to locate the- lost note. After questioning the witness, Wells Fargo’s counsel immediately began arguing that the evidence established the note was lost.
The borrowers again moved for an involuntary dismissal, maintaining their arguments that the note could still be with the former- law firm and that Wells Fargo could not offer any personal testimony that the former law firm was contacted.
The trial court squarely asked: “Okay. Anything further?” The borrowers’ counsel declined to present any. further argument. The trial court then stated: “I don’t think there’s any more to discuss.” Wells Fargo’s counsel .replied: “Not based on. that, Your Honor, no.” The trial court then *92 granted the motion for involuntary dismissal.
On appeal, Wells Fargo argues that reversal is required because the trial court granted an involuntary dismissal before the close of its case and because it submitted unrebutted routine evidence that it contacted its prior law firm to search for the note.
The standard of review applicable to a trial court’s ruling on a motion for involuntary dismissal is de novo. Deutsche Bank Nat’l Tr. Co. v. Huber, 137 So.3d 562, 563 (Fla. 4th DCA 2014). ‘When an appellate court reviews the grant of a motion for involuntary dismissal, it must view the evidence and all inferences of fact in a light most favorable to the nonmoving party .... ” Deutsche Bank Nat’l Tr. Co. v. Clarke, 87 So.3d 58, 60 (Fla. 4th DCA 2012).
Florida Rule of Civil Procedure 1.420(b) governs involuntary dismissals and provides in relevant part:
After a party seeking affirmative relief in an action tried by the court without a jury has completed the presentation of evidence, any other party may move for a dismissal on the ground that on the facts and the law the party seeking affirmative relief has shown no right to relief
[[Image here]]
“We have repeatedly held that a trial court may not involuntarily dismiss an action before the plaintiff has rested its case.” Fischer v. Fischer, 195 So.3d 1170, 1172 (Fla. 4th DCA 2016). Under the facts of this case, however, we agree with the borrowers that Wells Fargo waived the right to insist upon strict compliance with the applicable procedural rule. See Williams v. Salem Free Will Baptist Church, 784 So.2d 1232 (Fla. 1st DCA 2001).
In Williams, the First District acknowledged that the trial court had committed a procedural error by entering a directed verdict in favor of the plaintiff at the close of the plaintiff’s case but before the defendant had presented his case in chief. Id. at 1232. However, the appellate court found that the defendant had waived strict compliance with this procedural rule by failing to object to the procedure employed by the trial court. Id. at 1234-35. The court emphasized that defendant’s counsel “did nothing more in opposition to the directed verdict motion than make a vague comment about the evidence, and completely failed to advise the court that [the defendant] intended to put on additional evidence that would contradict the evidence put on by the [plaintiff].” Id. at 1234. The court further noted that “[a] procedural error not timely raised in the trial court is waived unless the party asserting the error can demonstrate that such a waiver would be a denial of due process.” Id.
Here, Wells Fargo waived the right to insist upon strict compliance with rule 1.420(b). Not only did Wells Fargo fail to object to the trial court’s procedure, but it also failed to advise the trial court that it intended to present additional evidence. Indeed, immediately before the trial court granted the involuntary dismissal, Wells Fargo indicated that it did not have anything further to present. Moreover, the trial court had already given Wells Fargo two opportunities to provide testimony on the lost note issue. The record therefore demonstrates that the trial court gave Wells Fargo ample opportunity to be heard. On these facts, Wells Fargo has not demonstrated how its procedural due process rights were violated as a result of this unpreserved procedural error.
On the merits, however, we conclude that the trial court erred in granting involuntary dismissal based on its finding *93 that Wells Fargo presented no evidence that it contacted its former counsel to determine whether the note was lost. Wells Fargo did present unrebutted, competent evidence that it contacted its former attorney when searching for the lost note. Specifically, Wells Fargo’s witness testified that: (1) where a note cannot be found after it was sent to a law firm, Wells Fargo’s routine practice involves contacting that law firm, and (2) Wells Fargo followed that routine practice in this case. This evidence was competent evidence of routine practice under Florida’s Evidence Code, see § 90.406, Fla. Stat. (2015), and was sufficient to preclude an involuntary dismissal, as the trial court was required to view the evidence and all inferences of fact in a light most favorable to Wells Fargo, the nonmoving party.
Accordingly, we reverse the final judgment entered upon the order granting involuntary dismissal and remand for a new trial.

Reversed and Remanded.

Taylor, Conner and Forst, JJ,, concur.